No. 3502

Second Circuit
(Second Division)

———

STATE OF LA. EX REL. O'BEIRNE v. POLICE JURY OF RED RIVER PARISH ET AL.

———

(June 11, 1931. Opinion and Decree.)

———

H. L. Hughes, of Natchitoches, attorney for plaintiff, appellant.

S. R. Thomas, of Natchitoches, and W. H. Wamsley, of Coushatta, attorneys for defendants, appellees.

STEPHENS, J. The state of Louisiana brings this suit on relation of J. J. O'Beirne, resident taxpayer. The relator alleges that he has no adequate remedy at law, and that in order to protect his interests and enforce his rights, the court should issue its alternative writs of mandamus, directed to the police jury of Red River parish, commanding it to open a public road, alleged to have been rendered useless to the public generally, and to him in particular, by virtue of a caving bank of Red river and a fence erected by Mrs. Catherine Brocato. Mrs. Brocato was made a nominal defendant in the suit, but no relief is prayed for as against her.

The police jury excepted to relator's proceeding by mandamus, and answered, admitting the former existence of the public road which relator seeks by this action to open, but alleging that said road had long since been abandoned, and that no necessity existed for its being reopened. The answer strongly suggests that the sole purpose of the suit is to compel the police jury to expropriate a right of passage for the benefit of relator over the lands of his neighbor Mrs. Brocato.

The district judge, after hearing had, recalled the alternative writs of mandamus and rejected relator's demands, from which said judgment he appeals.

The evidence adduced on the trial of the case was not transcribed, but it was agreed between counsel for the parties that the finding of facts by the trial judge is correct and is accepted for the purposes of this appeal.

The facts as stated in the able judge's opinion are as follows:

"Many years ago, the road as alleged by plaintiff and designated as the river road was established. It is probable, there is no one living along this road who can recall just when it begun to be used and maintained as a public road. This road ran from Shreveport south on the west bank of Red River to the line of Natchitoches parish on the south and perhaps on to the town of Natchitoches. It followed generally along the high bank of Red River. Opposite Coushatta the road ran on or near the banks of this river and practically followed it to and through the property

of plaintiff and that now owned by Mrs. Brocato, the property of the last two named persons being some eight or ten miles south of Coushatta. Some ten years ago there was constructed by the Police Jury of the parish of Red River a graded dirt road paralleling the road designated in plaintiff's petition as the 'river road,' and which graded road extended from north line of Red River to the south line. This road is now known as the 'Louisiana Purchase Highway' and was constructed along the railway tracks of the Texas and Pacific Railway Company. This road ran west of the old river road varying in distance from a mile to perhaps half mile. After this road was constructed, it was used in the place of the river road, except in extreme wet weather, when the river road because of its sandy soil to be found on the front of this river was passable under most any conditions. However, in 1924 or early in 1925 the road along the Texas and Pacific tracks was entirely gravelled and thereafter it was used exclusively. The Police Jury made no effort to maintain it or to expend any money in its maintenance. In many places the old road bed caved into Red River and a very great portion of it was fenced in and some of it placed in cultivation. Perhaps here and there the old road, as is the case with the plaintiff was used only as an outlet to the gravel road. O'Beirne seems to have continued to use this road as an outlet until April or May of the present year, when a portion of the road on the place of Brocato caved into Red River and thereby became impassable. At the place of entrance and where it left the Brocato property it seems not to have caved, but after the portion had caved off, as I recall the evidence Brocato placed some bars across the road and extended his fence either to the bank of Red River or to the stream of Red River. Plaintiff's demand as I understand it is that these bars be removed and that the Police Jury compel Brocato to give additional land for a new road bed in lieu of that caved in. O'Beirne made formal demand upon Brocato and the Police Jury to open the road and both refused. * * *

"It might be stated in connection with this that O'Beirne has an outlet other than the road in question but it is some considerable distance further over this outlet than over the road in question. * * *

"The old road running along the river bank from Caddo parish line to Natchitoches parish line covered perhaps a distance of 40 miles. The gravel road constructed some years ago, as previously stated, ran parallel with this old road. I do not remember exactly what the evidence showed as to whether from the time the gravel road or the Louisiana Purchase Highway enters Red River parish on the north and leaves it on the south takes up any portion of the old road. However, our knowledge of this road together with the evidence leads me to doubt there being but very little, if any."

The relator relies on the old English maxim "Once a highway, always a highway." He contends that nonuser by the public, and failure to repair, and intention to abandon by the police jury cannot work a legal abandonment of a public road once existing. That a public road legally ceases to exist only when it is no longer needed for public purposes, and is abandoned by the police jury by formal ordinance duly passed. Relator may be correct in this, but it must be determined that he is correct in a proper legal proceeding. Mandamus may not be resorted to for such purpose.

Writs of mandamus will properly issue to a public officer or body if said public officer or body has failed or refused to perform a plain, unequivocal, ministerial duty imposed by law. If the duty imposed requires the exercise of judgment or discretion on the part of the officer or public body, as to the manner or extent of its performance; or as to whether it be performed at all, writs of mandamus will not issue to enforce it. Clearly, it is the province of mandamus to enforce undisputed rights, and such process may not be lawfully substituted for the ordinary and less

peremptory proceedings by which disputed questions are determined and adjudicated.

In the instant case the relator relies, for authority for the issuance of the writs of mandamus, upon Revised Statutes, sec. 3386, which reads as follows:

"In case any legal road be closed, obstructed or changed in violation of the provisions of this act, it shall be the duty of the Police Jury, summarily, to open and remove all obstructions to said road, and to restore it to its former condition, at the expense of any person or persons who may have closed, obstructed or changed the same."

This section clearly imposes upon the police jury the ministerial duty of opening closed legal roads, and removing obstructions therefrom. If this case presented no question of fact other than that the police jury had refused to remove an obstruction from an admittedly legal and existing road, we think writs of mandamus would properly issue to enforce relator's rights. The case as presented, however, is far from being so simple of solution. The police jury, though not having abandoned the road by ordinance, no doubt considers it abandoned in law and in fact, as evidenced by the defense of this suit. If the road was legally abandoned, the jury was without duty as respects it, and if it had removed the obstructions erected by the adjacent landowner, who is asserting a reversionary interest, it would be an act of trespass for which the jury would be liable in damages. That portion of the road which has been physically extinguished by encroachment of the river cannot be restored. Therefore, in order to open the road the police jury must have proceeded to lay out and expropriate another right of way over the Brocato land, which would entail an expenditure of money for court costs and compensation.

Certainly, under the difficult circumstances presented, it cannot be reasonably contended that the duty of the police jury in the premises was clear and unequivocal, and may have been performed without the exercise of discretion.

The courts will not interfere by mandamus to compel the performance of a duty dependent upon disputed and doubtful facts.

The Supreme Court of Wisconsin in considering this question used the following language in the case of State ex rel. Schermerhorn v. McCann et al., Supervisors, 107 Wis. 348, 83 N. W. 647, 649:

"A mandamus proceeding will not lie to compel a public officer to perform a duty dependent upon disputed and doubtful facts, or where the legal result of the facts is a subject for reasonable controversy. If the right be reasonably in serious doubt, from either cause mentioned, the discretionary power rests with the officer to decide whether or not he will proceed to enforce it till the right shall have been established in some proper action; and that discretion, fairly exercised, cannot be controlled by mandamus. State v. Hastings, 10 Wis. 518; State v. Sauk Co., 62 Wis. 376, 22 N. W. 572; Wood, Mand. 67, 68."

It was held by the Supreme Court of Michigan in the case of French v. Common Council of the Village of South Haven, 85 Mich. 135, 48 N. W. 174:

"Mandamus to compel the common council of a village to commence proceedings to remove obstructions in a street claimed to be a public highway will not lie where the person obstructing the street in good faith denies that it is a highway, and asserts title thereto."

We are of the opinion that the judgment of the district court is correct and should be affirmed, and it is so ordered.