hKNOLL, Judge.
The plaintiff, Frank Hebert, is a former employee of Abbey Medical, Inc., a wholly owned subsidiary of the defendant corporation, Abbey Healthcare Group, Inc.[1] (hereafter collectively referred to as “Abbey”). In 1991, Hebert and other employees were offered the opportunity to purchase shares of Abbey common stock. Under the terms of the stock subscription agreement, each purchaser promised to pay forty percent of the total purchase price in cash, and to sign a nonrecourse promissory note, secured by a pledge of the stock, for the remaining sixty percent. Hebert took advantage of this offer and on November 4,1991, executed an agreement with Abbey for the purchase of 4,974 shares of stock at $5,027 per share, a total sum of $25,004.30. Hebert delivered a cashier’s check to Abbey in the amount of $10,-000.00 and signed a promissory note for the remainder of the purchase price. In January 1¾1992, the stock split 4r-for-3, increasing the number of shares owned by Hebert to 6,634.
In October 1992, Abbey management discovered that the company was leasing its Lafayette office budding from Hebert, who at that time was an Abbey employee. Hebert had apparently learned that Abbey was in the market for a budding and brought the property to Abbey’s attention. Abbey leased the premises in 1989 through a real estate agent representing “Bert Management.” It was not disclosed that Bert Management was actuady Frank Hebert. Hebert left Abbey’s employ after the arrangement was discovered, and on January 22, 1993, Abbey filed suit against Hebert in Lafayette Parish to recover the substantial profits Hebert had earned on the lease arrangement.[2]
On January 28, 1993, Hebert executed a written contract authorizing Abbey to sell twenty percent of his stock holdings and to apply the proceeds to the balance due on the promissory note. Thirteen hundred twenty-six shares of Hebert’s Abbey stock were sold on June 10, 1993 for the sum of $27,018.38. Just over $11,000 remained after the promis *280 sory note was paid in full with accrued interest. However, Abbey withheld the net proceeds of the sale, contending that the lease arrangement constituted a breach of the duty of fidelity which Hebert owed to his employer, and as a result, “it should not have to pay over to Frank Hebert the profits from a sale of stock earned in return for his faithful service to Abbey, when Hebert had in fact failed to serve Abbey faithfully.”
On February 8, 1994, while discovery was progressing in Abbey’s suit, Hebert filed a petition for a writ of mandamus in St. Tammany Parish, seeking to compel 18Abbey and its officers to deliver certificates evidencing Hebert’s ownership of 5,308 shares of Abbey stock[3] and to pay over the net proceeds of the June 1993 sale, plus attorney’s fees. Both parties subsequently agreed to transfer the mandamus action to Lafayette Parish, and a contradictory hearing was set for March 28, 1994.
Prior to the hearing, the defendants filed various declinatory and dilatory exceptions, including an exception of lack of personal jurisdiction based on improper use of the long-arm statute. After the defendants agreed to release Hebert’s share certificates, the hearing was re-set for May 31, 1994. The trial court denied Abbey’s exceptions and granted Hebert’s petition for writ of mandamus without taking evidence or giving oral or written reasons for judgment. After a hearing to fix attorney’s fees, the trial court awarded plaintiff judgment in the sum of $11,096.63 on the stock sale, $2,133.92 in attorney’s fees, and legal interest from the date of judicial demand.
Abbey brings this appeal, contending that because the object of plaintiffs demand is a money judgment and/or the enforcement of contested contractual rights, the trial court erred in permitting the plaintiff to proceed by writ of mandamus. Abbey also objects to the plaintiffs use of the long-arm statute in a summary proceeding. For the reasons which follow, we vacate the judgment of the trial court and remand this case for further proceedings.
WRIT OF MANDAMUS
Mandamus is a writ directing a public officer or a corporation or an officer thereof to perform any of the duties set forth in LSA-C.C.P. Arts. 3863 and 3864. LSA-C.C.P. Art. 3861. A writ of mandamus may be issued when the law provides Lno relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. LSA-C.C.P. Art. 3862. Mandamus is an extraordinary remedy, to be used only when there is a clear and specific legal right to be enforced or a duty which ought to be performed. It never issues in doubtful cases. State ex rel. Loraine, Inc. v. Adjustment Board, 220 La. 708, 57 So.2d 409 (1952); State ex rel. Hutton v. City of Baton Rouge, 217 La. 857, 47 So.2d 665 (1950).
LSA-C.C.P. Art. 3864 provides that a writ of mandamus may be directed to a corporation or an officer thereof to compel:
(1) The holding of an election or the performance of other duties required by the corporate charter or bylaws or prescribed by law; or
(2) The recognition of the rights of its members or shareholders.
It is clear from the text of this article that mandamus may be used to compel the performance of corporate duties which are purely ministerial in nature, i.e., those duties which require no exercise of judgment or discretion, however slight, in their performance. For this reason the jurisprudence has developed the rule that mandamus may be used to compel a corporation to transfer stock, State ex rel. Pope v. Bunkie Coca Cola Bottling Co., 222 La. 603, 63 So.2d 13 (1953); to compel it to hold regular meetings as required by its charter, Alexis v. Coker, 35 So.2d 907 (La.App. Orl.1948); and to compel it to permit a shareholder to examine the corporate books, State ex rel. Carey v. Dalgarn Const. Co., 168 La. 620, 122 So. 884 (1929). However, mandamus cannot be used to compel the performance of contractual obligations. State ex rel. Arbour v. Board of *281 Managers, 131 La. 163, 59 So. 108 (1912); State ex rel. Brown v. United Gas Public Serv. Co., 197 La. 616, 2 So.2d 41 (1941).
In the case sub judice, Hebert claimed that he was entitled to recover a money judgment against Abbey for the net proceeds of the stock sale, plus attorney’s fees. Abbey challenged Hebert’s entitlement to the money and attorney’s fees because of |5the dispute over the lease. While we do not believe that this unrelated dispute would preclude the issuance of a writ of mandamus under the proper circumstances, Hebert’s claims nonetheless arise under the stock subscription agreement and the January 1993 contract for the sale of twenty percent of the Abbey stock. The jurisprudence has long held that performance of a contractual obligation may not be compelled by writ of mandamus. State ex rel. Arbour and State ex rel. Brown, supra. Hebert has an adequate remedy against the defendants in the form of an ordinary action for such monies as he might be owed pursuant to the contracts existing between the parties. Our law, in particular LSA-C.C.P. Art. 3864, does not allow plaintiff to institute a mandamus proceeding to compel defendants to pay a sum of money under a claim arising ex contractu, and for that reason, plaintiff must proceed by ordinary process.
SERVICE OF PROCESS
In the trial court, Abbey objected to the plaintiffs use of the long-arm statute, LSA-R.S. 13:3201 et seq., as a basis for acquiring personal jurisdiction in a summary proceeding. Citing Clay v. Clay, 389 So.2d 31 (La.1979), Abbey contends that a nonresident defendant in a summary proceeding may not be served under the long-arm statute. We disagree.
In Clay, supra, the plaintiffs instituted a petition for a writ of quo warranto against a nonresident defendant in a summary proceeding. A certified copy of the original and amended petitions, the order setting the matter for hearing, and the writ of quo warranto were served on the defendant pursuant to the provisions of the long-arm statute. On review, the Louisiana Supreme Court held that service of process was insufficient because the defendant had not been served with citation.
The Second Circuit subsequently noted that Clay did not hold that the long-arm statute could not be used under any circumstances in a summary proceeding. Investor 16Inns, Inc. v. Wallace, 408 So.2d 978 (La. App.2d Cir.1981). The Investor Inns court stated that Clay should be interpreted to mean that if a plaintiff in a summary proceeding relies upon the long-arm statute to acquire jurisdiction over a nonresident defendant, the due process requirements of the statute must be strictly followed. The availability of the long-arm statute is limited in a summary proceeding only when the nonresident defendant is not afforded the same delays to which he would be entitled in an ordinary proceeding. Investor Inns, supra, at 981.
We find the legal reasoning of Investor Inns persuasive. We also take note of the favorable comments made by Professor Howard L’Enfant regarding the Investor Inns decision. Howard W. L’Enfant, Jr., Louisiana Civil Procedure, 43 La.L.Rev. 491 (1982). Professor L’Enfant, an eminent authority of civil law and procedure, stated:
“The court’s decision in Investor Inns is clearly correct. Article 2596 of the Code of Civil Procedure provides that ‘[t]he rules governing ordinary proceedings are applicable to summary proceedings, except as otherwise provided by law.’ Since no special provisions govern service of process in a summary proceeding, the ordinary provisions for service of process apply, including the long-arm statute for service on a non-resident defendant. Thus, a plaintiff in a summary proceeding may use the long-arm statute — in fact, he would have no other way of securing jurisdiction over the nonresident defendant — but he must comply with its provisions.... As for the requirements of due process, the defendant must be given notice sufficient to inform him of the nature of the action filed against him and be given a reasonable time to appear and present his objections.”
43 La.L.Rev. at 491-92 (footnotes omitted).
The record in the ease sub judice shows that true copies of the citation and petition for writ of mandamus were sent by certified mail to the defendants on February 16, 1994, and were received on February 22, 1994. The rule to show cause why the writ should *282 not be granted was heard on May 31, 1994, more than three months later. The defendants were at all times represented by Louisiana counsel, having previously retained a local law firm to file suit against Hebert on the lease |7arrangement. The defendants were clearly provided with due process of law as required by Investor Inns, and under the facts of this case, we hold that service pursuant to the long-arm statute was proper.
DECREE
For the foregoing reasons, we find that plaintiff was not entitled to proceed against the defendants by writ of mandamus. The writ of mandamus can be brought as an ordinary action; therefore, Hebert should be allowed to timely amend his petition to cure any procedural defects, if any exist, and proceed via ordinaria. We vacate the judgment of the trial court and remand for further proceedings consistent with the views expressed in this opinion. Costs of the mandamus proceedings and this appeal are assessed to Frank J. Hebert, III.
JUDGMENT VACATED; CASE REMANDED.

. Abbey Healthcare Group, Inc. is a Delaware corporation with its principal place of business in California.

. Abbey Medical, Inc. v. Frank J. Hebert, III, individually and d/b/a Bert Management, Docket No. 930349-A, Fifteenth Judicial District Court for the Parish of Lafayette.

. The shares owned by Hebert after the 4-for-3 stock split (6,634) less the shares sold by Abbey at Hebert’s request (1,326) = 5,308 shares.